UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JASON THOMAS ARMSTRONG                          CIVIL ACTION

VERSUS                                          NO. 06-573

TERREBONNE PARISH                               SECTION "T" (2)
SHERIFF ET AL.


## REPORT AND RECOMMENDATION

Plaintiff, Jason Thomas Armstrong, is a pretrial detainee currently incarcerated in

the Cheyenne Mountain Re-Entry Center in Colorado Springs, Colorado.  He filed this

complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against Terrebonne

Parish Sheriff Jerry Larpenter and the Terrebonne Parish Criminal Justice Complex

Medical Contractor.  Plaintiff alleges that while incarcerated in the Terrebonne Parish

Criminal Justice Complex in Houma, Louisiana, he was subjected to unsafe conditions

of confinement when he fell from an improperly equipped top bunk and was

subsequently provided with inadequate medical care for an injury suffered in the fall.

Plaintiff seeks compensatory damages.

On April 18, 2006, I conducted a telephone conference in this matter. Participating were plaintiff pro se and William Dodd and Danna Schwab, counsel for defendants. Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## THE RECORD

Armstrong stated that although he is currently incarcerated in Colorado, his claims in this case arise from a short period of time during which he was incarcerated in the Terrebonne Parish jail. He stated that he was in the Terrebonne Parish jail for about 45 days from April 26, 2005 till June 8, 2005, awaiting extradition to Colorado after pleading guilty in Terrebonne Parish to traffic violations. He said he was extradited to Colorado on a parole violation, having previously been convicted of a drug offense in Colorado for which he was on parole. He said he is currently serving a three-year prison term in Colorado.

Plaintiff confirmed in his testimony that he asserts two separate claims in this case, including (1) that he was subjected to unsafe conditions and fell from an improperly equipped and unsafe top bunk while incarcerated in the Terrebonne Parish jail, and (2) that he was not provided with proper medical care for injuries suffered in the fall. He alleged that jail officials "were not doing their job properly and it led to neglect because of what they done."

2

Armstrong testified that the initial event about which he complains occurred on May 29, 2005, about ten days before he left Terrebonne Parish to be returned to Colorado.  He stated that on May 29th, he was "locked down" at about 10:30 or 11 p.m. He said that he was housed in a two-man cell, and he was getting into his bed, which was the top bunk.  Armstrong stated that the cell was furnished with a table, a swivel chair and a bunk bed, but with no good way to get to the top bunk. He said he did not want to step on his cellmate's bunk to get into his bed because it would cause problems with his cellmate, so he had to step onto the chair, then onto the table then into bed. He said that on that night when he stepped onto the chair, "I slipped forward, then backward. As I fell I hit my head on the corner of the table, and then I fell and hit the ground. I don't know which incident knocked me unconscious, but hitting my head on both of those, something knocked me out for a few minutes."

Armstrong said he lay there for a few minutes, and when he regained consciousness he saw his cellmate waving a towel through the cell door in an attempt to get the attention of a guard on duty.  He estimated that he was unconscious for two to five minutes.  He said the desk in his cell was built into the wall and floor, but the chair was hooked to the desk and swung in and out.  He said the chair was in the "out" position when he stepped on it, and it moved because it has no locking mechanism.  He described the process of getting into the top bunk as stepping on the chair, then the desk and then

3

hopping into the bed from about three feet away. He said there was no ladder and the only other way to get into the bed was to step on his cellmate's bunk. He alleged that having to climb into bed that way was an unsafe living condition, but added that it was also unsafe that his cell was not equipped with any kind of "call box" that inmates could use to summon help in a situation like that.

Plaintiff testified that at the time of his fall, one guard was on duty watching about eight cell blocks from a central security pod. He said that his cellmate was unable to flag down the guard. Armstrong said his head was scratched in the fall, he cleaned the blood and then tried to flag down the guard himself. He said that no guard came to his cell and he "had to sit up all night long," until a nurse appeared at 8 a.m. the next morning on regular rounds to distribute medications and see to any needs of the inmates. He stated that he could not recall the nurse's name, but described her as a short, white woman with short brown hair whom he believed was the head nurse.

Armstrong testified that he had received the medical records that I previously ordered, Record Doc. No. 15, and reviewed them. He said that the forms reflecting charges for medications were not in the records. He stated that when the nurse appeared at 8 a.m. on the morning after his fall, he told her he had fallen and hit his head and tried to show her his scratch. Armstrong alleged that the nurse "basically ignored me," and when he asked for something for his headache and to see a doctor, the nurse told him to

4

turn in the proper request form. He said he filled out the request form to see a doctor, but the nurse directed him to fill out another form requesting medication.

Armstrong said his medical records are <u>not</u> accurate in stating that on May 30, 2005, he was provided with Tylenol.  He stated that he did not receive any medication or treatment on that date from the nurse who first saw him. He testified that he was not given medication until seven or eight days later, on June 7, 2005, when he was seen by Dr. Scott Haydel, who prescribed 600 mg. of Ibuprofen.  Plaintiff testified that on June 7th, Dr. Haydel looked at his head, prescribed Ibuprofen and provided it to him that day. Armstrong confirmed that he was transferred from the Terrebonne Parish jail to Colorado on the very next day, June 8, 2005, so that the only pain medication and examination by a doctor that he was ever provided at the Terrebonne Parish jail was on that single day, June 7, 2005.

Armstrong testified that he had problems with his medical care at the Terrebonne Parish jail even before his fall.  He said that when he subsequently arrived at the prison in Colorado, a cracked tooth that had abscessed was found, and Terrebonne Parish officials had failed previously to diagnose it properly, instead providing him only with cold medication, since his complaints had been about sore throat and swollen gums.  He confirmed, however, that his prior medical care had nothing to do with the incident about which he complains in this case and said he was mentioning it only to illustrate that he

was denied proper treatment.  He said he felt he had been ignored after his May 29th fall.

He said that prior to his fall, he had been provided with a medication similar to Actifed,

together with an antibiotic and Ibuprofen for his complaints of cold-like symptoms that

later turned out to have been caused by the abscessed tooth.  He testified that he had been

seen by Dr. Haydel on May 2, 2005, in response to his prior complaints before his May

29th fall.

Armstrong complained that after his fall "I expected them to at least see me within

a day or so once I hit my head and I complained of it, and they never did, and I sat in a

cell and I suffered because of it and I wasn't given no medical treatment for over eight

days."  Asked to describe the injuries he suffered, he said his head was "swollen up in the

back, it was like a gold ball sized lump. It had a cut in it that congealed up. It healed

eventually. Now that I've seen a doctor here, they diagnosed me with post-concussion

syndrome [and] I've been on medication ever since," including a pain medication, Elevil

for sleep and pain and other medications for headaches, dizziness and some vomiting and

nausea.

On cross-examination, Armstrong confirmed that when he was stopped by

Terrebonne Parish officials for traffic violations, he gave them a false name, Chris Hall,

since he knew that he was wanted in Colorado, and the false name Chris Hall remains on

6

some of his records from the Terrebonne Parish jail, including some of the medical request forms he submitted while in the jail.

## ANALYSIS

I.      STANDARDS OF REVIEW

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'" Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended). A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims. Spears, 766 F.2d at 180. "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis, 157 F.3d at 1005. The information elicited at

such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990).  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."  Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable.  "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents.  A defendant may not use medical records to refute a plaintiff's testimony at a Spears hearing."  Id. (citing Wilson, 926 F.2d at 482-83; Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)).

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible."  Id. at 270.

8

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)).  "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not."  Moore, 976 F.2d at 269.  A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as explained by his testimony at the Spears hearing, fails to state a claim under the broadest reading.[1]

II.   CONDITIONS OF CONFINEMENT

Viewed broadly, plaintiff's written allegations and testimony that he was injured when he fell from a top bunk and that his injuries were exacerbated because his cell was

---

[1] Pro se civil rights complaints must be broadly construed, Moore, 30 F.3d at 620, and I have broadly construed the complaint in this case.

not equipped with a call box for summoning a guard assert a claim that he was exposed

to unconstitutional conditions of confinement while incarcerated in the Terrebonne

Parish jail.  Armstrong was an accused parole violator during the time period about

which he complains. Regardless whether an inmate is a pretrial detainee or a convicted

prisoner, however, the standard of liability is the same for episodic acts or omissions of

jail officials of the type alleged in this case.  <u>Olabisiomotosho v. City of Houston</u>, 185

F.3d 521, 526 (5th Cir. 1999); <u>Hamilton v. Lyons</u>, 74 F.3d 99, 104 n.3 (5th Cir. 1996);

<u>Hare v. City of Corinth</u>, 74 F.3d 633, 650 (5th Cir. 1996) (en banc).  In <u>Hare</u>, the Fifth

Circuit held

> (1) that the State owes the same duty under the Due Process Clause and the
> Eighth Amendment to provide both pretrial detainees and convicted
> inmates with basic human needs, including medical care and protection
> from harm, during their confinement; and (2) that a state jail official's
> liability for episodic acts or omissions cannot attach unless the official had
> subjective knowledge of a substantial risk of serious harm to a pretrial
> detainee but responded with deliberate indifference to that risk.

<u>Id.</u>

Here, there is nothing in plaintiff's written submissions or <u>Spears</u> testimony from

which it might be inferred that the conditions he described were the result of a prison

official's act either "implement[ing] a rule or restriction or otherwise demonstrat[ing] the

existence of an identifiable intended condition or practice" or that the "official's acts or

omissions were sufficiently extended or pervasive, or otherwise typical of extended or

pervasive misconduct by other officials, to prove an intended condition or practice." Id. at 645.  On the contrary, in this case, "'the complained-of harm is a particular act or omission of one or more officials,'" Olabisiomotosho, 185 F.3d at 526 (quoting Scott v. Moore, 114 F.3d 51, 53 (5th Cir. 1997) (en banc)), and the deliberate indifference standard enunciated in Estelle v. Gamble, 429 U.S. 97, 104 (1976), applies.

As to these particular claims, Armstrong's allegations do not constitute violations of the Constitution.  Two requirements must be met before Section 1983 liability will arise for constitutional violations relating to conditions of confinement of the type plaintiff described.  First, the alleged deprivation must objectively be "sufficiently serious," which means that "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 847 (1994).  To rise to the level of a constitutional violation, the conditions must be "'so serious as to deprive [plaintiff] of the minimal measure of life's necessities,' in this case the basic human need for sanitary conditions." Alexander, 351 F.3d at 630 (quoting Woods v. Edwards, 51 F.3d 577, 581 (5th Cir. 1995)).  Second, the inmate must show that a prison official was deliberately indifferent to inmate health or safety. Id.  A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the

inference could be drawn that a substantial risk of serious harm exists, and <u>he must also draw the inference</u>." <u>Id.</u> at 837 (emphasis added).

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a <u>stringent</u> standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. . . . The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

<u>Southard v. Texas Bd. of Crim. Justice</u>, 114 F.3d 539, 551 (5th Cir. 1997) (citing <u>Board of County Comm'rs v. Brown</u>, 520 U.S. 397 (1997) (other citations omitted)) (emphasis added).  "'Subjective recklessness,'" as used in the criminal law, is the appropriate test for deliberate indifference." <u>Norton</u>, 122 F.3d at 291 (citing <u>Farmer</u>, 511 U.S. at 838-40).

In the instant case, the "deliberate indifference" standard applies because all of plaintiff's complaints concerning the conditions relate to jail officials' episodic acts or omissions, and no challenge is made to "the general conditions and restrictions of [plaintiff's] confinement, knowingly imposed." <u>Hamilton</u>, 74 F.3d at 104 n.3.  Thus, Armstrong must allege facts sufficient to establish that any defendant <u>knew</u> he faced a <u>substantial risk</u> of <u>serious</u> harm and <u>disregarded that risk</u> by failing to take reasonable measures to abate it.  Plaintiff fails to allege any such facts when he complains about the lack of a ladder to get into the top bunk and the absence of a call box.  A reasonable means of getting into the top bunk, if the inmate would have taken reasonable care for

12

his own safety, was available.  The Constitution requires neither ladders for bunk beds nor call boxes to remedy the fall experienced by plaintiff. Although the conditions he described may be imperfect and inconvenient, plaintiff has failed to allege either deprivations so extreme that they violate the Constitution or sufficiently serious harm resulting from these problems to meet the requirements of <u>Farmer</u>, and this claim does not rise to the level of constitutional violation.

At best, under these circumstances, plaintiff asserts a garden variety tort claim, not a claim of civil rights violations cognizable under Section 1983.  Claims arising from allegedly negligent acts do not give rise to relief under Section 1983.  The Supreme Court has held that "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss or injury to life, liberty or property." <u>Daniels v. Williams</u>, 474 U.S. 327, 328 (1986); <u>Davidson v. Cannon</u>, 474 U.S. 344, 347 (1986).  In a number of contexts, other courts have determined that allegations amounting to negligence cannot support a Section 1983 claim.  <u>Mendoza v. Lynaugh</u>, 989 F.2d 191, 195 (5th Cir. 1993) (negligent medical care);  <u>Hare v. City of Corinth</u>, 74 F.3d 633, 641-42, 646 (5th Cir. 1996) (negligence insufficient to support failure to protect claim under Section 1983);  <u>Eason v. Thaler</u>, 73 F.3d 1322, 1328-29 (5th Cir. 1996) (negligence cannot support Section 1983 action for deprivation of religious rights or for an Eighth Amendment claim based upon prison officials' alleged gross negligence in permitting

a gas leak to occur); Doe v. Taylor Independent School District, 975 F.2d 137, 142 (5th Cir. 1992), vacated on other grounds, 15 F.3d 443 (5th Cir. 1994) ("Even when constitutional liberty interests are implicated, not all bodily injuries caused by state actors give rise to a constitutional tort, for it is well settled that mere negligence does not constitute a deprivation of due process under the Constitution.").

Plaintiff alleges that prison officials are responsible for his fall and resulting injuries because they assigned him a top bunk that was not equipped with any climbing apparatus and failed to equip his cell with a call box. These are allegations of tortious conduct that do not rise to the level of improper conditions of confinement which violate the Constitution. Defendants cannot be liable under Section 1983 for injuries resulting from alleged acts of negligence.

## III.   MEDICAL CARE

Armstrong was apparently a pretrial detainee for the time period about which he complains. Before the Fifth Circuit's decision in Hare v. City of Corinth, 74 F.3d 633 (5th Cir. 1996), it appeared that prison officials must provide pretrial detainees with reasonable medical care unless the failure to provide it was reasonably related to a legitimate government interest. Bell v. Wolfish, 441 U.S. 520, 539 (1979); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992); Cupit v. Jones, 835 F.2d 82, 85 (5th Cir. 1987). The inquiry was "whether the denial of medical care . . . was objectively reasonable in light

of the Fourteenth Amendment's guarantee of reasonable medical care and prohibition on

punishment of pretrial detainees." Pfannstiel v. City of Marion, 918 F.2d 1178, 1186 (5th

Cir. 1990), abrogated on other grounds as recognized in Martin v. Thomas, 973 F.2d 449,

455 (5th Cir. 1992).

> In Hare, however, the Fifth Circuit held:
>
> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

Hare, 74 F.3d at 650.   The Fifth Circuit explained that for the Bell "reasonable

relationship" test to be applicable, the pretrial detainee must be able to show that a prison

official's act either "implement[s] a rule or restriction or otherwise demonstrate[s] the

existence of an identifiable intended condition or practice" or that the "official's acts or

omissions were sufficiently extended or pervasive, or otherwise typical of extended or

pervasive misconduct by other officials, to prove an intended condition or practice." Id.

at 645.   If the pretrial detainee is unable to prove either, the incident will be considered

to be an episodic act or omission and the deliberate indifference standard enunciated in

Estelle v. Gamble, 429 U.S. 97, 104 (1976), will apply.   Id.

In Estelle, the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors.  Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment.  Id. at 105-06; accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976); Hare, 74 F.3d at 650.  "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it."  Farmer v. Brennan, 511 U.S. 825, 847 (1994).  The Farmer definition applies to Eighth Amendment medical claims.  Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment.  "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities."  Farmer, 511 U.S. at 834 (quotation omitted).  Thus, plaintiff must show deliberate indifference to his "serious medical needs" to satisfy this prong.  Wilson v. Seiter, 501 U.S. 294, 297 (1991); Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993).

16

Further, the plaintiff must establish that the defendant possessed a culpable state of mind.  Farmer, 511 U.S. at 838 (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id. at 837.  "Mere negligence or a failure to act reasonably is not enough.  The officer must have the subjective intent to cause harm."  Mace v. City of Palestine, 333 F.3d 621, 626 (5th Cir. 2003).  If the court finds that one of the components of the test is not met, it need not address the other component.  Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998).

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.  Board of the County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 117 S.Ct. 1382, 1391 (1997) . . . .  The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

Southard v. Texas Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (citations omitted) (emphasis added).  "'Subjective recklessness,' as used in the criminal law, is the appropriate test for deliberate indifference."  Norton, 122 F.3d at 291.

In the instant case,  plaintiff's pleadings as expanded by his testimony establish that nothing more than episodic acts or omissions as defined in <u>Hare</u> are at issue in this case.  Thus, the "deliberate indifference" standard applies and plaintiff must allege facts sufficient to establish that defendants knew he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it.  In this case, Armstrong fails completely to allege facts sufficient to establish deliberate indifference.

Even assuming (although certainly not deciding) that Armstrong's injuries suffered in the fall presented a serious medical need, he has alleged facts, confirmed by the medical records, that negate any inference of deliberate indifference by jail officials. Plaintiff's complaint, as amended by his testimony and confirmed by the medical records, shows that he received constitutionally adequate medical care for the mere ten (10) days during which he was incarcerated at the Terrebonne Parish Criminal Justice Complex after his fall.  Prison officials at the jail responded to plaintiff's complaints about his injury resulting from the fall.  Plaintiff was examined by a doctor and provided with medication in response to his complaints.

Although plaintiff has alleged a short delay of about eight days in receiving medical care between the time he first requested treatment and the time it was provided and is dissatisfied with the speed and effectiveness of his treatment, none of his

18

allegations rise to the level of deliberate indifference necessary to establish a constitutional violation cognizable under Section 1983.

First, mere delay in receiving care is not in and of itself a constitutional violation. Mendoza, 989 F.2d at 195; Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990); Simons v. Clemens, 752 F.2d 1053, 1056 (5th Cir. 1985).  Regardless of the length of delay, plaintiff at a minimum must show deliberate indifference to serious medical needs. Wilson, 501 U.S. at 298.  The delay about which plaintiff complains did not cause "a life-long handicap or permanent loss" sufficient to constitute a serious medical need for constitutional purposes.  See Hill v. Dekalb Reg'l Youth Detention Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994) (citing Monmouth County v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) ("Where the delay [in medical care] results in an inmate's suffering 'a life-long handicap or permanent loss, the medical need is serious.'")); Wesson, 910 F.2d at 283-84 (minor delay in escorting injured prisoner to prison infirmary for treatment of swollen wrists with some bleeding cannot be construed as deliberate indifference to serious medical needs).  No such permanent loss resulting from delay has been alleged in this case.

Contentions like Armstrong's that amount to a mere disagreement with the speed, quality or extent of medical treatment or even negligence do not give rise to a Section 1983 claim. "[A]lthough inadequate medical treatment may, at a certain point, rise to the

level of a constitutional violation, malpractice or negligent care does not." Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted) (active treatment of prisoner's serious medical condition, which ultimately resulted in death, does not constitute deliberate indifference, even if treatment was negligently administered); see Norton, 122 F.3d at 291-92; Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991); Mendoza, 989 F.2d at 193 (prisoner's disagreement with the type or timing of medical services provided cannot support a Section 1983 claim); Wesson, 910 F.2d at 284 (allegations establishing provision of medical treatment found inconsistent with inference of deliberate indifference).  Therefore, plaintiff's complaints in this case about his medical care advance a legally frivolous argument and fail to state a claim for relief under Section 1983.

## **RECOMMENDATION**

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's Section 1983 complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal

conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this   27th   day of April, 2006.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE